### JOSEPH RUSSELL *v.* SAMUEL BUCK.

It is no waiver of a defence, on the part of the warrantor of a note, that he is advised, after giving the warranty, of a state of facts which will be a defence for him, and omits to give the holder notice of them and of his intention to avail himself of them, in a case where there is no extension of credit given the maker of the note by reason of the warranty.

In the state of New York the law seems to be settled, that a negotiable note, indorsed by the payee, as a security or in payment of a *precedent* debt, is not transfered in the due course of trade, so as to preclude the maker from setting up such matter in defence against the holder, as he might have done against the payee.

Where a note is made negotiable, and the payment of it guarantied in the state of New York, the *lex loci* governs the liabilities of the parties.

ASSUMPSIT, upon a written guaranty, executed by the defendant to the plaintiff, of the following tenor:

' Whereas, Buck & Bailey indorsed a note, made by
' Amasa B. Gibson and Reuben Gibson, for nineteen hundred

'and fifteen dollars and thirteen cents, dated June 26, 1828, 'and payable one year from date, with interest, which note 'is now the property of Joseph Russell. Now, therefore, I 'hereby guaranty to said Russell the collection and payment 'of the above described note, and engage to pay the same 'on condition that said Russell does not call on me for pay- 'ment till the first day of May, 1831.' There was no date to the guaranty.

This case came before this court at the January Term, 1839, (see 11 Vt. R. 166,) and a new trial was granted. By leave of the court, the plaintiff afterwards amended his declaration, by filing six additional counts. The following is the sixth count.

' And also for that whereas, heretofore, to wit, on the 26th 'day of June, 1829, the said Amasa B. Gibson and Reuben 'Gibson, made, executed and delivered to Buck & Bailey 'and Hand & Kenyon one other note of that date, for $1,- '915.13, payable to them or order, in one year, with interest, 'at the Farmer's Bank, and the said Buck & Bailey and 'Hand & Kenyon, on the day and year last aforesaid, by 'their indorsement of the same note, in writing, for a valu- 'able consideration, ordered the contents of said note to be 'paid to plaintiff, according to the tenor thereof, and after- 'wards, to wit, on the 26th day of June, 1829, the plaintiff 'presented said note, it being then due, at the Farmers Bank, 'where the same was in and by said note made payable, and 'demanded payment of the same; but neither the makers nor 'any other person appeared to pay said note, but neglected 'and refused, of all which the defendant, on the day, and 'year last aforesaid, had notice, with the other indorsers, and 'afterwards, to wit, on the 1st day of July, 1829, at Troy, 'in the state of New York, the defendant, in consideration 'of the premises, and that the plaintiff would forbear to call 'on the defendent for payment of said note until the 1st day of 'May, 1831, undertook to guaranty to the plaintiff the collection 'and payment of said note, and promised to pay him the same 'on the said 1st day of May, 1831. And the plaintiff avers 'that the makers of said note, at the time the same became 'due and payable, were, and ever since have been, insolvent 'and entirely destitute of property, by means whereof the 'plaintiff was and has been wholly unable to collect and

'obtain payment of the note of them, or either of them. And
'the plaintiff avers that, confiding in the said last mentioned
'promise and undertaking of the defendant, he did forbear
'to call on the defendant until the 1st day of May, 1831,
'whereby and according to the tenor and effect of said de-
'fendant's promise, he became and was liable to pay the
'contents of said note to plaintiff; yet the defendant not
'regarding his said last mentioned promise,' &c.⁻ Plea, *non-assumpsit.* Issue to the country.

The note guarantied by the defendant was executed in the
state of New York and made payable at the Farmers Bank
in Troy, N. Y.

On the trial in the county court, the defendant introduced
testimony tending to prove that the indorsement of the note
in question, by Buck & Bailey, of which firm the defendant,
Buck, was a member, was made by Bailey, the other partner,
upon a blank piece of paper, and a note was to be made
thereon for a sum not exceeding one thousand dollars, and
to run for a period of sixty or ninety days only; that after
said blank indorsement had been obtained, said note was
drawn for a much larger sum, and for a longer time.

The plaintiff offered testimony tending to show that the
makers of the note became insolvent before it became due,
and that any attempt to enforce its collection, after it became
due, would probably have been ineffectual.

Testimony was introduced tending to show that the de-
fendant signed the guaranty in question, about two months
after the note was dated, and that shortly after he signed the
guaranty, and long before the note became due, he was in-
formed that the indorsement had been obtained in blank,
and fraudulently filled up for a larger sum than the one
agreed upon, and that before the note became due, the de-
fendant had ample time to have communicated this informa-
tion to the plaintiff, and no testimony was offered to show
that he had done so. Testimony was also offered tending
to show that, at the time when defendant gave the guaranty
in question, the firm of Buck & Bailey were indebted to the
makers of said note, in a larger sum than the one specified
in the note, and that the indebtedness existed and was known
to defendant when he gave the guaranty. It also appeared
that the defendant was informed, about six months after the

time of obtaining the blank indorsement, and after the guaranty was given, that one of the makers of the note gave a receipt for the blank indorsement of the following tenor :

'Received of Buck & Bailey their indorsement on a blank, 'to be filled up with a note not to exceed $1000—, at one 'of the Banks. Crownpoint, January 29, 1828.

'AMASA B. GIBSON.'

The plaintiff also introduced testimony tending to show that the note in question was duly presented for payment, protested for non-payment, and that all the indorsers thereof were duly notified, and that, by the use of reasonable diligence, it could not probably have been collected of the the makers, or of any of the indorsers except the defendant.

There was evidence given on the part of the defendant tending to show that Buck & Bailey were partners in the lumbering and merchandize business, in Crownpoint, New York ; that the indorsement of the name of the firm of Buck & Bailey was made on a blank paper, by Bailey, without the knowledge of Buck, and for the accommodation of Amasa B. Gibson ; that no consideration was ever received by Buck & Bailey, at any time, or in any manner, from any person ; that Buck had no knowledge of such an indorsement having been made, until the note was shown him in Troy, in the hands of the plaintiff, at the time he gave the guaranty. And testimony was given tending to show that the plaintiff received the note of Gibson in payment of, or as security for, a pre-existing debt due from said Gibson.

The plaintiff requested the court to charge the jury that if the defendant's guaranty was executed before the note became due, and before any knowledge, on the part of the defendant, of the manner and circumstances under which it was obtained, and if such knowledge came to the defendant before the note became due, then it was his duty to communicate the facts to the plaintiff within a reasonable time, and if he failed so to do, it was a waiver of all right to take advantage of the fraud in obtaining the indorsement. And if such guaranty was executed after the defendant had knowledge of the fraud, then the execution of the guaranty was a waiver of the fraud used in procuring it.

The plaintiff also requested the court to charge, that, however this might be, if Buck & Bailey did owe the makers of

the note a larger sum than the amount of the note, at the time of the making of the guaranty, the execution of the guaranty, by the defendant, must be viewed as a waiver of the right to contest the indorsement, at all events so far as to throw the burden of proof on the defendant to show that such indebtedness, constituting a fund to pay such note, or guaranty, had been, by force of law, drawn out of the hands of Buck & Bailey.

The county court did not charge the jury as requested by the plaintiff, but did charge them, in substance, as follows: that the plaintiff must, in order to entitle himself to recover, establish the fact that the contract declared upon, and which had been given in evidence, was made upon good and sufficient consideration, and this must depend upon the question, whether the evidence in this case showed a legal liability upon the defendant, as one of the indorsers of the note, to pay the same to the plaintiff; and that as it appeared by the evidence that the note was, on the 29th day of June, 1829, duly presented at the place where payable, and payment demanded, which had been refused, and a protest, containing notice of the dishonor of the note, had been inclosed in the next mail directed to the several indorsers, the notice was sufficient to charge them, and that this furnished evidence, *prima facie*, to charge the defendant as one of the indorsers of said note, with the payment thereof, and also, that the guaranty itself furnished evidence, *prima facie*, as to Buck, of such liability. But the jury were further told that if they found, from the evidence, that the note which Buck had guarantied the payment of, was indorsed by Bailey in the name of the firm of Buck & Bailey, on a blank paper at the request of Amasa B. Gibson, under an agreement between him and Bailey that it should be filled up only for one thousand dollars, and that the makers of the note, afterwards, without the consent of Buck & Bailey, filled it up for a much larger sum, and put it into circulation, it was a fraud upon Buck & Bailey, and that they could not be charged as indorsers of said note, unless it had passed into the hands of the plaintiff, as indorsee of the note, in the due course of business, for a valuable consideration, and, in that event, though the note was put into circulation in the manner it was claimed to have been, by the defendant, still, the de-

fendant would, notwithstanding this objection, be liable to the plaintiff as one of the indorsers thereof and that this furnished a sufficient basis for a consideration of the defendants special contract to pay the note in case the plaintiff would delay the collection of it against Buck until the time stipulated in the contract, and had delayed accordingly to call upon defendant for payment thereof. The jury were also told, that if the note was put into circulation in fraud of Buck & Bailey and was passed and indorsed by the Gibsons to the plaintiff in payment of, or as security for, a precedent debt due from the Gibsons to Russell, this was not in due course of business; and that, in that event, the plaintiff could not recover in this action, but their verdict should be for defendant. They, however, were told if they found from the evidence, that Buck, at the time he gave the guaranty to pay the note to the plaintiff, knew all the facts relative to the manner in which the note was made and got into circulation, he could not now object to the payment of the note on that account, but would be bound by his contract, though the note was passed to the plaintiff in payment of, or as security for, a precedent debt.

The jury were also told that, in general, one partner may bind his co-partner in making and indorsing a promissory note in the name and in the behalf of the firm, and that third persons were not bound to inquire whether the partner was acting on the partnership account, or his own, and that the presumption was that it was on the partnership account, and that this was sufficient, unless the contrary was proved, or unless the person to whom the paper was passed had notice, or reason to believe, that the partner who signed the partnership security was acting on his own private account; that the guaranty, by one partner, in the name of the firm, not in the regular course of their business, would not bind the firm, unless adopted and acted upon by the other partner, and, in that event, it would bind the firm; and that in this case the fact that the note was in the hands of the makers and by them passed to the plaintiff, was not evidence to the plaintiff that the indorsers of the note were but accomodation indorsers, though it might be sufficient to invite inquiry; yet, as Buck, with a full knowledge that Bailey had indorsed this note in the name of the firm, had subsequently promised

the plaintiff to pay the note, it was a recognition of the binding effect of the act of other partner upon the firm, and that the defendant cannot object that the firm are not bound by the indorsement of Bailey, simply on the ground that it was without the scope of the partnership business.

The jury were also told that they were to regard this contract of the defendant as a conditional undertaking, and that it was incumbent upon the plaintiff to use reasonable diligence to collect the note of the makers, and that if he failed to collect the note for the want of such diligence, he could not recover against the defendant ; but they were told that if they were satisfied that the makers of the note were bankrupt at the time the note became due, and that a suit, proceeding to judgment and execution, against them would have been inoperative towards producing any satisfaction of the note, and that the defendant had sustained no injury by reason of such omission, it was not necessary that there should have been any legal proceeding on the note against the makers, to entitle the plaintiff to recover, but that such bankruptcy would excuse the want of such proceedings. Under these instructions the jury found a verdict for the defendant. The plaintiff excepted to the charge of the county court.

*C. Linsley*, for plaintiff.

I. If the defendant made the agreement, declared on, in ignorance of the circumstances under which the signature of the firm was obtained, it was his duty, on learning the facts, to give the plaintiff timely notice, if he intended to avoid his agreement.

The information, in contemplation of law, would have been of the highest importance to the plaintiff. It was known only to the defendant and his partner, and the plaintiff could have no means of learning the facts except through them. Here they were silent about the facts, now relied on as a defence, until they had obtained all the forbearance contemplated by this contract, and now to insist upon this defence for the first time, after suit brought, and after taking the benefit of the delay, is a gross and glaring fraud upon the plaintiff who reposed in security on the faith of the defendant's positive undertaking and promise.

II. It appearing that Buck & Bailey were indebted to Gibson, at the time when the contract in question was made, it would seem that nothing short of proof that that indebtedness had been satisfied under due course of law would be sufficient to enable them to set up the present defence against an innocent holder. *Fenton v. Pocock*, 1 Com. Law R. 72.

We think the charge erroneous in directing the jury that there was no consideration for this contract, unless the defendant was legally holden on the note. Now the defendant was not holden, if he determined to give the present contract as a settlement of plaintiff's claim. In that case he would be bound by it, for the settlement of a doubtful claim binds the promissor. And here the jury might well presume that, in consideration of the delay, and inasmuch as Buck & Bailey were then indebted to Gibson, Buck determined to come to a compromise and in his pretended defence to gain time.

This note having been drawn and indorsed blank by Buck & Bailey, while they were largely indebted to the drawers, to enable the drawers to go into the market and raise money on it, or purchase property, we insist that they cannot be allowed, after they have induced business men to act on the faith of this fictitious paper, by parting with their property or extinguishing a precedent debt, to come into court and set up this fictitious transaction as a ground of defence. This kind of paper is entitled to no favor. It is injurious to the business and morals of the community, and to treat it with favor is to reward the bold and reckless at the expense of the cautious and prudent.

The doctrine that if a bill is not capable of being enforced between the original parties, it does not become so by being taken for a precedent debt, may perhaps be reasonable in a certain class of cases, and would be upheld by a strong equity. But can it with reason, safety, or equity, be applied to accommodation paper, which is sent forth into the world to delude that it may betray? Especially is the doctrine unjust and monstrous when an innocent holder has received such a bill and reposes upon it until, upon suit, he is met and prostrated by this secret poison. At the time this paper was passed, the makers, Gibsons, were good; and the plaintiff having delayed his debt for this paper, and further delayed it on the defendant's recognition and express promises to pay;

to permit the defendant now to defeat the plaintiff by this concealed defence, is neither good morality nor good law. New York Digest, 148. *Brown* v. *Mott,* 7 Johns. 361.

We insist that the contract was an absolute undertaking to pay the note, if it remained unpaid at the time stipulated in the contract. 12 East, 227. 8 Id. 245. 7 Peters, 122. *Allen* v. *Rightman,* 20 Johns. 364. *Manning* v. *King,* 7 Com. Law R. 57.

As to the notes being *nudum pactum,* I do do not see the force of the reasoning on this point. Forbearance alone is a good ground for a promise, and is it any the less obligatory that the defendant was before bound? The fact that Buck & Bailey were already holden on the bill, did not exhaust the power to contract. If holden at all they were holden jointly, but, by this contract, Buck became severally liable, and it is no answer to say that he still remained liable on the note, if it was so. That did not preclude him from making another contract and binding himself in a different way and at a different time.

*H. Seymour* and *A. C. Hand* for defendant.

The neglect of defendant to inform the plaintiff, as soon as he learned the facts, respecting the note, in no way precludes him. It is not one of those cases where a party is bound to give notiece. The cases where notice is necessary are where the paper is forged, and immediate notice is necessary to enable a party, to fix other parties, to look farther. As in the cases, 1 Hill, R. 287, 295. 12 Wheat. 333, 354. 9 B. & C. 902. 3 Burr. 1354. 6 Taunt. 76. 5 Taunt, 488, 495, *n.*

But, again, it is an estoppel, or nothing, and the party is not estopped in such cases unless the " other party has been induced to alter his condition." *Heane* v. *Rogers,* 9 B. & C. 577. (17 C. L. R. 449.) 13 Wend. 208. 6 Vt. R. 529.

Here, so far from delaying proceedings against the other parties, the paper was calculated to quicken the plaintiff in proceeding against them, being, as this court already very properly decided, conditional by its very terms; diligence being necessary to hold defendant, even if the contract was valid in other respects.

This point of the learned counsel is wholly unsupported

by any adjudged cases. It is not of that class of cases where notice of the party's knowledge is necessary to be given.

The second point, 'that the memorandum might be considered as a settlement of the claim between the parties, is wholly unsupported by proof ; and besides, the judge was not called upon so to charge the jury.

The third point is equally untenable. The fact that Buck & Bailey owed the makers of this note, at that time, is too improbable. Even if the Gibsons were creditors at the moment this paper was signed, it is difficult to see how that circumstance could form a consideration or inducement for this agreement to pay this debt to another person at a future period. Besides, this would be setting up a different consideration from the one expressed in the paper. The case cited from 7 J. R. 361, *Brown* v. *Mott*, to this point, was the purchase of a note by paying for it, part in cash and part in a pre-existing debt, the purchaser having knowledge that it was mere accommodation paper. Knowledge that a note is mere accommodation paper is not sufficient as against a *bona fide* holder.

The fourth point, that this was an absolute undertaking, we consider as *res judicata*, and fully settled by the decision in this cause, 11 Vt. R. 166. To that decision we only add, that the case of *Allen* v. *Rightman*, 20 J. R. 364, and all the cases cited by the opposing counsel, and *Dean* v. *Hall*, 17 Wend. R., and *Nash* v. *Skinner*, 12 Vt. R., are cases where the guarantor either received a consideration, or there was some consideration passing from the promisee, at the time.

The opinion of the court was delivered by

BENNETT, J.—Under the charge of the court, the jury must have found that the defendant, at the time of giving the guaranty, had no knowledge of the existence of the facts, which would have defeated an action against the indorsers of the note. But it is said, in argument, that he was bound to give the plaintiff timely notice, after he was advised of the facts, of his intention to avoid the contract, and that, not having so done, it amounts to a waiver of that matter

of defence. Is this so? The law never requires a useless act to be performed.

In the case of forged paper, and where the effect of the delay would be to give an extended credit, there may be some good reason for requiring notice. The party may wish to look further, and to charge others. But the defendant's contract has been adjudged to be a conditional one, and that the plaintiff was bound to use reasonable diligence to collect the note of the makers, before he could resort to the defendant on his guaranty. 11 Vt. R. 166. He could not have been induced to alter his course by not having such notice.

Whether Buck & Bailey were indebted to the Gibsons, at the time this guaranty was given, or not, can have no effect. There is no pretence that this entered into, and became a part of, the consideration of the defendant's contract and cannot be drawn in to aid in sustaining it.

It has been said that the charge of the court was wrong in regard to the consideration of this contract, in making it dependant upon the fact whether this defendant was bound as an indorser or not, and it is insisted that it might have been given in settlement of a doubtful claim. To this it is a sufficient answer, that this is not the consideration set forth in the declaration, and there is no evidence tending to prove such a consideration, so as to call upon the court for any such charge.

It is well settled that any defence, available against the payee of a negotiable note, may be set up against the holders of it, unless it has been *bona fide* passed " while currant in the due course of trade."

In the state of New York, it seems to be settled that, when a negotiable note is passed by the payee, in payment, or as security, of a *precedent* debt, the holder does not receive it " in due course of trade," but that it must be received on account of a debt contracted at the time. *Coddington* v. *Bay,* 20 Johns. Rep. 651. *Payne* v. *Cutter,* 13 Wend. R. 605. *Rosa* v. *Brotherson,* 10 Wend. 85. *Wendell et al* v. *Howell,* 9 Wend. 170. This was a transaction in the state of New York, and mnst be governed by their decisions, even though we might differ from them. We see no reason why the case now before us should form an exception to the rule established in New York. The plaintiff

made no advance upon the note. His remedy against the Gibsons for his debt was not cancelled nor postponed by means of the fraud practised upon him, in passing to him a fraudulent security, and the result must be that Buck could not be chargeable as indorser of the note to the present holder.

The court having, on a previous hearing, decided that the contract declared upon is conditional, the question cannot be considered open. Though the bill of exceptions presents other questions, yet, as they are not relied upon, it is sufficient to say we discover no error in the proceedings of the county court, and their judgment is affirmed.