## NICHOLS' EX'R vs. PORTER.

### January Term, 1867.

1. The making of a note and the endorsing or assigning of the same are distinct contracts, each governed by the law of the place where the acts were respectively done.

2. An assignor is not liable as an endorser, of paper not negotiable according to the laws of this State, although it may have been negotiable under the laws of the place where it was made. Therefore in order to make an assignor liable for its payment it must be averred and shown that the maker was insolvent at the time it became due, or at the time of the assignment, if assigned after it became due, or that due diligence has been used to collect it, or that it could not have been made by the use of due diligence. Nor can there be a recovery under such circumstances under the common counts in assumpsit.

3. The liability of a previous endorser of commercial paper is not affected by the fact of its coming into the possession of a party responsible therefor after it has been protested.

4. By a bond executed to the N. W. Bank, by J. and others, including P. in conformity to terms of agreement of co-partnership of J. M. T. & Co., of which firm J. was a member, P. as the surety of J. became liable to pay to the bank all liabilities of whatsoever nature which J. M. T. & Co. might incur to the bank, or bills of exchange, notes, or bonds drawn, endorsed, accepted or guaranteed by the firm and discounted by the bank, to the extent of 5,000 dollars. Among other paper discounted were two notes not negotiable by the laws of this State but which were assigned by J. M. T. & Co. to the bank; the bank sued on the penal bond of 5,000 dollars, alleging for breaches the non-payment of certain notes and bills of exchange, including these two notes, whereupon P. paid off the indebtedness and the cashier delivered him the notes, bills of exchange, &c., sued on, and he brought suit against J. M. T. & Co. HELD:

---

\* See page 1.

Judge Loomis, of the VI circuit, was called to the bench.

14      COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,          Nichols' Ex'r vs. Porter.          1867.

That J. M. T. & Co. were not liable to the bank for the amount of the two notes until they could first show the use of due diligence against the makers, or show some sufficient reason why due diligence would have availed nothing; and that not being so liable, the payment by P. was voluntary and he is not entitled to recover for money paid under such circumstances.

On the 1st day of February, 1855, *Hugh Nichols, Abijah Johnston* and *James M. Todd,* of the city of Wheeling, entered into articles of co-partnership under the name of *J. M. Todd & Co.* to carry on the business of an iron mill. Among other stipulations of the agreement, was an arrangement whereby they were individually to deposit in the Northwestern bank, bonds in the penalty of 5,000 dollars, with such security as the bank would require, to remain so deposited until the business of the firm was closed, for the purpose of indemnifying the bank in contemplated loans and discounts by the firm.   Subsequently, on the 23rd of February, 1855, *Johnston* gave his bond with *Asa D. Johnston, Wm. M. Berryhill,* and *James S. Porter,* who was plaintiff in the court below, as sureties.   The bond is as follows:

## " Article of Agreement.

Know all men by these presents, That *Abijah N. Johnston, Asa D. Johnston, Wm. M. Berryhill,* and *Jas. S. Porter* are held and firmly bound unto North Western Bank of Virginia in the sum of 5,000 dollars to the payment of which we bind ourselves jointly and severally and each of us binds his heirs, executors and administrators jointly by these presents. Witness our hands and seals, this 23rd day of February, 1855.

The condition of the above obligation is such, that whereas: the firm of *James M. Todd & Co.,* may from time to time hereafter apply to said bank to discount for them bills of exchange, notes and bonds made, drawn, indorsed, accepted or guaranteed by said firm, and may from time to time become indebted to said bank or liable to it for money advanced or otherwise; now, therefore, if the said firm of *James M. Todd & Co.,* shall well and truly pay to said bank or its assigns all liabilities of whatever nature which they

hereafter incur to said bank, then this obligation shall be void, or otherwise it shall remain in full force. It is agreed that this obligation shall apply to any and all liabilities which may be hereafter incurred by said firm of *James M. Todd & Co.* to said bank, notwithstanding one or more of the partners now constituting said firm may withdraw therefrom, and one or more new partners be admitted, and whatever change may hereafter be made in the members of said firm.

ABIJAH N. JOHNSTON, [SEAL.]
ASA D. JOHNSTON, [SEAL.]
WM. M. BERRYHILL, [SEAL.]
JAMES S. PORTER, [SEAL.]

Teste:

John C. Bloomfield.
John McGaughy.

The firm became involved in 1858, and on the 16th day of July in that year, gave their individual bond to the N. W. Bank for 20,000 dollars, and arranged to retire all their obligations to the bank, except those which were not then due and which were afterwards the basis of this suit, amounting in the aggregate to 3,375 dollars. They subsequently failed and made an assignment. On the maturity of the paper not due on the 16th of July as before stated, the bank brought suit against *Johnston* and others on the penal bond of 5,000 dollars, assigning as breaches the non-payment of the paper. Pending this suit *Porter*, one of the securities in the penal bond, paid the bank the amount due on the paper, and the suit by it was dismissed; which payment was made on the 12th day of November, 1862, and thereupon the cashier of the bank delivered him the bills of exchange, notes and bonds upon which he founded this suit, because, as he said upon the trial, *Porter* had paid the debt.

*Porter* brought an action of assumpsit in February, 1863, against *Todd, Johnston* and *Nichols*, the firm of *J. M. Todd & Co.* to recover the money thus paid by him to the N. W. Bank, for the use of the firm.

The declaration contained six special counts and the common counts. The first count was for the amount of a bill

of exchange drawn on *T. J. Scott*, of *Memphis*, *Tenn.*, for 699 dollars and 1 cent, by the defendants, but which was duly protested for non-payment. The second count described a note drawn in *St. Louis*, *Mo.*, by *H. G. Bilstein & Co.*, and alleged that on the 16th day of April, 1858, that firm made their note in writing whereby they promised to pay to the order of the defendants, *J. M. Todd & Co.*, six months after date, the sum of 352 dollars and 64 cents for value received, negotiable and payable without defalcation or discount; *it also alleged that the place appointed for the payment of the note was *St. Louis*, in the State of *Missouri*, and that the contract was to be governed, as to its nature, obligation and interpretation, according to the laws of that State; that the defendants endorsed the note at *Wheeling*, in the State of *Virginia*, on the 20th day of April, 1858, and ordered and appointed the same to be paid to the plaintiff; that afterwards, in October, 1858, the note was duly protested; by means whereof the defendants, according to the laws of *Missouri*, become liable to pay the said sum of money with interest thereon and charges of protest, and being so liable, undertook, &c.

The third count was similar to the second, the note being made by the same parties at the same place, except as to amount and dates.

The fourth count was for the amount of a note drawn by *William Means*, of *Steubenville*, *Ohio*, promising to pay to *Means & Bro's*, sixty days after date, 478 dollars and 1 cent, at the Citizens' Bank of *Steubenville*, and which *Means & Bro's* had endorsed and ordered and appointed to be paid to defendants, and defendants had endorsed the note and ordered the same to be paid the plaintiff, at *Wheeling*, in the State of *Virginia*; and that the note had been duly protested.

The fifth count was for a sum due in the same manner and form as the note drawn by the parties in the fourth, but differed as to amount and dates.

The sixth count was for a note made by *Taylor & Embree*, payable to order of defendants, in *Wheeling*, at the N. W.

*See Code 1860, Chap. 144, Sec. 7.

Bank, for 557 dollars and 83 cents, endorsed by defendants and protested for non-payment.

Then followed the usual common counts for money paid out for use of defendants, &c.

At the October term, 1863, it was agreed that the plea of non-assumpsit, entered by all the parties at a former term, should be regarded and taken for the plea of *William Nichols*, executor of *Hugh Nichols*, dec'd, late one of the members of the firm of *J. M. Todd & Co.*, he having died pending the suit; and *Johnston* and *Todd*, other members of the firm not appearing, judgment was had against them for the sum of 3,376 dollars and 49 cents, damages, with interest from the 11th day of September, 1862.   At the December term, 1863, the defendant demurred to the declaration and each count thereof, and the cause was heard by the court, a jury being waived, as against the executor, and judgment entered for the plaintiff for 3,375 dollars with interest from the 12th day of November, 1862.

The defendant excepted to the opinion of the court in thus entering judgment against him; he also moved for a new trial which was denied him and he again excepted.

It was proven upon the trial, in addition to what has already been stated, that the notes of *Bilstein & Co.* and *Means* were delivered by the cashier to the testator, *Hugh Nichols*, and that at his request they were forwarded respectively to *St. Louis* and *Steubenville*, for collection, and that the sum of 379 dollars and 47 cents had been realized on the *Means* notes, and that *Nichols*, testator, had paid the N. W. Bank the expenses paid by the bank in the effort to make collection of the *Bilstein* notes; that several of the members of the firm, but not that the witness *Lamb*, cashier, remembered, *Hugh Nichols* specially, admitted their liability on the *Scott* acceptance and *Taylor & Embree* note.   That from the time the paper declared on fell due, the cashier applied to several members of the firm of *J. M. Todd & Co.* to arrange them but that they failed to do so; that the plaintiff, *Porter*, had no notice of the articles of co-partnership, being a private matter between the parties; and that at the time the

plaintiff signed the penal bond of 5,000 dollars, witness *Johnston*, one of the members of the firm, told him that each of the members of the firm were to give a bond of like amount.

*Nichols*' executor, applied to this court for a supersedeas, which was granted.

*Z. Jacob*, for the plaintiff in error, insisted that the demurrer to the first count ought to have been sustained, as also to the other counts.

That no judgment on the first six counts can be sustained or ought to be given, because the evidence does not show that the bill and notes were negotiated or transferred by the bank to any one, but that they were paid and so satisfied and extinguished.

That on the common counts, *Porter* cannot and ought not to recover, because he has no demand against *Nichols* or his estate. That so far as *Nichols* was concerned, *Porter's* intrusion into this affair was merely *voluntary* on his part, being without request or consideration on the part of *Nichols* or *Todd*. That *Porter* was the surety of *Johnson, and not* of *Nichols* or of *J. M. Todd & Co.* That *Porter* did not make the payment for *Nichols* or on his account, or at his request, in law or in fact. That *Porter's* obligation to the bank arose out of his executing the 5,000 dollar bond, and his doing so was a voluntary intrusion on his part without any *request of Nichols* or of *Todd & Co.* That a party merely paying a debt for which another is bound, does not make such other person his debtor, or himself the surety or creditor of such other person.

Also that said notes and each of them were not negotiable, and that they were paid and satisfied when they came to *Porter's* hands; that neither he nor the estate of *Nichols* is liable to *Porter* for the debt or debts in the declaration mentioned.

*James S. Wheat*, for the defendant in error, insisted:

*First*—In signing the penal bond, the defendant in error became the security to the North Western Bank of Virginia,

for the firm of *James M. Todd & Co.*, and not for *A. N. Johnston* individually.

*Second*—As the security in said penal bond, the defendant in error paid to the North Western Bank of Virginia, the several protested notes and bills mentioned in the declaration, all of which were negotiable paper, for the payment whereof said *J. M. Todd & Co.*, were liable. Such payment was not a voluntary one; and the defendant in error, became lawfully the holder of said paper, for value.

*Third*—Although thus the holder of this paper *supra protest*, he was, by the operation of the law, under the facts shewn in this cause, substituted to all the rights, although subject to all the liabilities, of the North Western Bank of Virginia, the holder at the time of protest.

MAXWELL, J.    This was an action of assumpsit in the circuit court of *Ohio* county in the name of James S. Porter against James M. Todd, Abijah N. Johnston, and Hugh Nichols, late partners in business under the firm name of J. M. Todd & Co.

The declaration contains six special counts and the usual common counts.

At the first term of the court after the declaration was filed the death of Hugh Nichols, one of the defendants was suggested on the record and the office judgment had at rules set aside, and the cause revived against William Nichols, the executor of the last will and testament of Hugh Nichols, deceased, by and with the consent of the said executor, and all of the defendants joined in filing the plea of non-assumpsit; but at a subsequent term of the court, by consent of the plaintiff and defendant Nichols, as executor as aforesaid, it was ordered the said plea be taken and regarded as the plea of the said Nichols only, allowing the office judgment had at rules to stand as against the defendants Todd and Johnson, and thereupon the court assessed the damages and rendered a judgment on the writ of inquiry against the said defendants Todd and Johnston for 3,376 dollars and 49 cents, the amount of the damages assessed with

interest and costs.    Afterwards at another term of the court,
the defendant Nichols demurred generally to the plaintiff's
declaration and to each count thereof, and the plaintiff
joined in the demurrer, which demurrer being considered
by the court was overruled, and the parties waiving their
right to have the issue tried by a jury referred the whole
matter of law and fact to the court, on consideration whereof,
the court rendered a judgment against the defendant Nich-
ols, as executor as afoeesaid, for 3,375 dollars damages, with
interest and costs.    The defendant Nichols excepted to the
opinion of the court and the court gave a bill of exception
certifying all the facts proved on the trial.

The point is not "made and distinctly stated in writing in
the cause" as to whether or not the case was properly
revived against the executor of Hugh Nichols, deceased, by
the consent of such executor and is therefore not "consid-
ered or decided."

The first error complained of is that the court below erred
in overruling the demurrer to the declaration and to each
count thereof.

Upon a careful examination, I am satisfied that all the
counts contained in the declaration are good except the sec-
ond and third and that the demurrer was properly overruled
as to all the counts except the two named.    The second and
third counts are, in substance, the same, the only difference
being in the amount and dates of the notes declared on and so
that what is a good objection to one is equally a good objec-
tion to the other.    The second count charges that, "on the
16th day of April 1858, at the city of St. Louis, in the State
of Missouri, H. G. Bilstein & Co. made their certain prom-
issory note in writing bearing date the day and year last
aforesaid, whereby they promised to pay to the order of the
defendants, by the name and style of Messrs. J. M. Todd &
Co., six months after the date of said note, the sum of 352
dollars and 64 cents for value received negotiable and paya-
ble without defalcation or discount, and then and there
delivered the said promissory note to the said defendants."
This count contains the further averment, "that the place

appointed in and by the said promissory note for the per-
formance of the contract, the place where the said note was
made and signed to wit: the city of St. Louis is in the State
of Missouri; and so the contract as to its validity, nature,
obligation, and interpretation is to be governed by the laws
of that State." Then follows the further averments, "that
after the making of the said promissory note and before the
same became payable, to wit: on the 20th of April 1858, at
the city of Wheeling, in the county of *Ohio*, aforesaid, in the
State of Virginia, the said defendants J. M. Todd & Co., to
whom or to whose order the payment of the said sum of
money in the said promissory note specified was to be made,
for value received, endorsed the said promissory note and by
their endorsement ordered and appointed the said sum of
money in the said note specified, to be paid to the plaintiff
and then and there delivered the said note so endorsed to
the plaintiff."

The averments then follow that, when the note fell due,
it was duly protested as to the maker and endorsers for non-
payment, and that by reason of the non-payment, protest
and notice, the defendants as the endorsers became liable to
pay to the plaintiff the amount of the note with interest
thereon.

This count presents the question as to the liability of an
endorser or more properly of an assignor, within this State,
of paper not negotiable by the laws of this State although
it may have been negotiable by the laws of the place where
it is made. This count contains no averment that the
makers of this note are insolvent or that due diligence has
been used, without avail, to make the money off of them, or
that due diligence would not have made the money; but
seeks to place the liability of the assignors, treating them as
endorsers, solely on the ground that the paper is negotiable
at the place where it is made.

Under the laws of Virginia, and the laws of this State are
the same, such a note as is described in this count is not
negotiable, and to make the assignor of such a note liable
for its payment it is well settled, that the maker must be

shown to be insolvent at the time the note falls due, or at the time it is assigned, if assigned after it falls due; or that due diligence has been used against the maker without making the money, or by the use of due diligence the money could not have been made.

The fact that the note may have been negotiable at the place where it is made will not alter this rule, because the making and endorsing, or assigning a note, are separate and distinct contracts, each governed by the law of the place of the contract. 2 Parsons on Notes and Bills, 347–8; *Williams* vs. *Wade*, 1 Met., 82, 83; *Daw* vs. *Rouell*, 12 N. H., 49; *Dunn* vs. *Adams*, 1 Ala., 527; *Russell* vs. *Buck*, 14 Vt., 147; *Allen* vs. *Merchants' Bank*, 22 Wend., 215.

The facts averred in this count not being sufficient to make the defendants as assignors, liable for the payment of the amount of the note, the demurrer to it, as well as to the third count, was well taken and should not have been overruled.

The next cause assigned as error is, that the judgment is contrary to the evidence in the cause.

This cause assigned as error presents the inquiry, first, whether the judgment is supported by the evidence under the special counts, and if not whether the evidence is sufficient under the common counts.

The facts certified show that the notes with the endorsements thereon, together with the protest thereof described in the second and third counts, were in evidence, and it seems to me clear that the plaintiff was not entitled to recover the amount of them under such counts, for the reason given when considering the demurrer to these counts.

The evidence under the first, fourth, fifth and sixth counts, I think, was sufficient to warrant a judgment on each and every one of them. Code of Virginia, 1860, p. 629, § 11; *Hayes* vs. *North Western Bank of Virginia*, 9 Gratt., 127.

It does not matter that the paper came into the possession of the plaintiff after it was protested for non-payment, *Davis* vs. *Miller & Co.*, 14 Gratt., 1.

It remains to inquire whether or not the judgment ren-

dered on the paper described in the second and third counts, is warranted under the common counts.

By the bond executed to the North Western Bank of Virginia, which was executed in conformity to terms of the articles of co-partnership of J. M. Todd & Co., Porter as the surety of Abijah N. Johnson, became liable to pay to the said bank all liabilities of whatever nature, which the said J. M. Todd & Co. might incur to the said bank, or bills of exchange, notes, and bonds, made, drawn, endorsed, accepted or guaranteed by the said firm and discounted by the said bank to the extent of 5,000 dollars, the penalty of the bond.

It appears from the facts in this case that all the paper described in the declaration was discounted by the North Western Bank for the use and benefit of the said J. M. Todd & Co., and that the paper described in the first, fourth, fifth and sixth counts is commercial paper, which was regularly protested so as to make the said J. M. Todd & Co. liable to the bank for the payment of the amount thereof. The paper described in the second and third counts was not negotiable in this State, but was nevertheless protested for non-payment. After the paper, described in the declaration, was protested, Porter paid the amount thereof to the bank.

It seems to me that the amount of the paper described in the first, fourth, fifth and sixth special counts might have been recovered under the common counts as money paid for the use and benefit of J. M. Todd & Co., because the said firm had become liable to pay it to the bank and the said Porter by the terms of the bond was bound to pay it. *Hall* vs. *Smith*, 5 Howard, 96; *Exall* vs. *Smith*, 8 Term R., 310; *Child* vs. *Worley*, Id., 610.

The paper described in the second and third counts was not negotiable in this State, and the said J. M. Todd & Co. were not liable to the bank for the payment thereof until the bank could first show the use of due diligence against the makers of the notes without making the money, or show some sufficient reason why the use of due diligence would have availed nothing; neither of which was done in this case.

The said J. M. Todd & Co. not being liable to pay the amount of these notes to the bank, Porter was not bound by the terms of his bond to pay it to the bank, so that the payment of Porter was a voluntary payment and he is not entitled to recover for money paid under such circumstances.

I am of opinion that the judgment complained of ought to be reversed with costs to the plaintiff in error, the demurrer to the second and third counts sustained, and that judgment ought to be entered in favor of the plaintiff below against the defendant below as executor, &c., for the amount of the paper described in the first, fourth, fifth and sixth counts, with interest thereon.

The other judges concurred.

JUDGMENT REVERSED.