Substance of the article of agreement sued on.

Avermentsin the declaration.

## Hunter's Adm'rs *vs* Miller's Executors.

### ERROR TO THE JESSAMINE CIRCUIT.

*Pleadings. Condition precedent. Consideration.*

JUDGE MARSHALL delivered the opinion of the Court.

THIS action of covenant was braught in 1833, by Miller against Wm. S. Hunter, upon an instrument of writing, in substance as follows: "Articles of agreement made this 2d day of September, 1817, between Francis Miller of the county, &c. of the one part, and William S. Hunter, agent for Thomas Todd and Mary Hunter, representatives of William Stewart, deceased, of the other part, witnesseth: that whereas the said Stewart, on the 15th of May, 1785, made an entry, &c., (which is recited,) which entry was surveyed and patented, &c., and suit now pending against John Scott, Francis Miller, &c. Now in order to compromise and adjust said claim, so far as it interferes with said Miller's claim, supposed to be about 220 acres, the said Miller promises and agrees to pay to the agent aforesaid, the sum of $600, four months from this date, upon the payment of which sum the representatives of said William Stewart, deceased, are to convey to the said Francis Miller the claim of said Stewart to the extent of his interference, should it exceed 220 acres, Miller to pay in proportion for the surplus. Signed,

his<br>
*Francis X Miller,* [*Seal.*]<br>
mark<br>
*Wm. S. Hunter, for* [*Seal.*]<br>
*Thomas Todd and Mary Hunter.*"

A memorandum signed in the same way, imports that it is understood that the claim of Stewart is to be conveyed, defending only against those claiming under him or his representatives.

The first count in the declaration averred that the interference was 323¾ acres. and that on the 20th of May, 1818, (four months and eighteen days after the stipulated

time of payment,) the plaintiff, at the special instance and request of the defendant, paid him in pursuance of the contract, $600 therein named, and $10 for the surplus, but the representatives of Stewart did not convey, &c. on said payment being made, nor have they or the defendant, or any one, refunded the money, &c. The second count, which was filed as an amendment to the declaration, says nothing of any surplus over 220 acres, nor of a request by the defendant, but avers that on the 20th day of May, 1818, the plaintiff paid $610. in full discharge and satisfaction of plaintiffs covenant; and without averring that it was received in satisfaction, &c. alledges that the said representatives did not convey to the plaintiff said Stewart's claim for any land interfering with his claim or title, but have wholly failed ; and further, that they had not, at the date of the covenant, nor since, any title or claim interfering with the land, or claim or title of the plaintiff.

In June, 1834, the defendant filed a plea, alledging that on the 15th day of July, 1819, the representatives of William Stewart did, by deed duly executed, convey to the plaintiff the claim of Stewart, to the extent of the said interference, &c. This plea was, on demurrer, adjudged bad. And it is now contended, that as the demurrer was not withdrawn nor any further defence made by the defendant, the demurrer should be considered as bringing up the declaration, and that if that should be deemed bad upon demurrer, the judgment for the plaintiff, rendered by default and upon inquiry of damages, should be reversed. But although the principle involved in this position is correct, yet as it appears from the record that the demurrer was sustained and the plea adjudged bad when there was but one count in the declaration, and that afterwards, on leave to amend, the second count was filed without objection, and the defendant never appeared nor took any step after his plea was overruled, and there was no attempt to make it applicable to the second count, it seems to follow that the second count cannot be considered as having been before the Court upon the demurrer. But as there was no plea nor appearance to the second count, and the judgment was not rendered

A plea is filed when there is but one count in a declaration, and a demurrer is sustained to the plea and another count is then added to the declaration and judgment by default, and an inquiry of damages. The whole declaration will be considered in this Court, as upon general demurrer.

by confession, *nil decit*, or *non sum informatus*, but by default merely, we suppose the whole declaration should now be regarded as upon a general demurrer.

In declaring on contracts which are executory, and the act to be done by the plaintiff is the first act, and the consideration of the act to be done by the defendant, the plaintiff must aver performance or something done which is equivalent.

The contract being executory on both sides, and the performance on the part of the plaintiff being the first act, and being the consideration of the act to be done on the other side, the plaintiff, in order to entitle him to his action, must aver performance, or something equivalent to it. He relies upon actual performance. But first, he did not pay on the day appointed by the contract; and if it be conceded that the acceptance of the money or of even a part of it afterwards, would imply a waiver by the other party, as to the time of performance, and in consequence thereof, a subsequent performance should place the plaintiff in the same condition with regard to his right of action, as if he had performed at the day, still the implied waiver as to time cannot imply a waiver of any thing else, and the plaintiff is no more entitled to his action without full performance of what is due from him by the legal effect of the contract, at the time of the postponed performance, than he would be entitled by a partial performance at the appointed day; unless indeed, he could rely upon the acceptance of something less than what was due, as full satisfaction of the greater sum, or as being a waiver of full performance, which, as in the case of waiver as to him, should give the same effect to a partial performance as if it had been full. Certainly it would be going very far to allow the written contract and the legal duties created by it, thus to be changed and dispensed with by parol. But if this could be done, we are satisfied that the mere acceptance of a partial payment, after the day, or at any time, though the payment be requested, does not, in pleading, imply a dispensation as to the residue. But the averment of such dispensation or waiver should be clear and explicit. The plaintiff may have paid a certain sum, part of what was due, as full satisfaction of the whole, and yet it may not have been received as full satisfaction. And if so, the condition was not fulfilled on which performance on the other part became due; and there was no default and no cause

of action until full performance on the part of the plaintiff, or such a waiver thereof as could be relied on.

Then the plaintiff having bound himself to pay a sum of money on a given day, he was bound, in case of delay, to pay interest on the sum due until payment was made, and especially if there was no waiver. But the interest on $600 for four months and eighteen days, is about $13 75, making $613 75 due on the 20th May, 1818, without reference to the surplus which, as averred in the first count, was worth more than ten dollars. . Upon the first count, therefore, there was a deficiency of about $14 in the sum paid, and upon the second count, which does not disclose the fact of a surplus, there was a deficiency of about four dollars.

The smallness of these deficiencies, and especially of the last, might perhaps, authorize the inference as a matter of evidence, that they had been waived or dispensed with, but this inference of fact, which might or might not be true, cannot be brought in aid of the averment in the declaration, any more than the inference arising from lapse of time or other circumstances, that the deed made in 1819, had been accepted, can aid the plea which fails to aver that fact. Under the most liberal rule, the declaration should show either full performance or that which is equivalent to it. Could a defendant owing $500, plead simply that he had paid, or that he had tendered $490 or $496, in full discharge and satisfaction of the debt? Could such payment be made effectual even by alledging an accord? Could it, at any time, be made effectual as a bar, without alledging explicitly, that it was received in full satisfaction? We suppose it could not, and therefore, conclude that there is no sufficient averment of performance on the part of the plaintiff in either count.

The second count, it is true, after stating a payment of $610, in full satisfaction, &c., avers, what was perhaps intended to excuse a non-performance on the part of the plaintiff, that Stewart's representatives had no claim to any land interfering with the land or claim of the plaintiff. This matter, however, would seem to be settled, if not by the payment of the $610, at least by the recitals

---

HUNTER'S AD'RS.
*vs*
MILLER'S EX'RS.

—And when a plaintiff is bound to pay money on a particular day, to give him a right of action, and fails to do so, he is bound to pay interest up to the day of payment, if there be no waiver of it; the averment therefore, of the payment of any sum less than the principal sum and interest, will not be a sufficient averment to sustain the action.

A party to a written contract is estopped to aver a fact admitted in the recitals of the contract, without averring that they were put there by either *fraud or mistake.*

of the writing sued on, which recites the entry, survey and patent of Stewart, for certain land, described by reference to natural objects, and admits an interference with the land or claim of Miller, and a suit therefor. The declaration avers neither fraud nor mistake in these recitals. It does not deny that Stewart's representatives had a claim to the land described. Does it intend to deny that the defendants land or claim was situated where he supposed, and admitted it to be in the writing declared on? And did he pay the $610, merely that he might after the lapse of fifteen years, sue to recover it back? Perhaps indeed the claim of Stewarts representatives may have been barred in the mean time by the length of Miller's possession; or his own claim may have been defeated by some other adverse title; and in that case it might have been true that the claim of Stewart, did not interfere with any land of the plaintiff. But whether Miller had any land, or claim or title, he purchased the title of Stewart's representatives; and this allegation is too vague and indefinite and unintelligible to relieve him from his contract; or to show that Stewart's representatives could not comply with theirs.

We are of opinion, therefore, that the declaration shows no cause of action, and the judgment must, on that ground, be reversed.

But there are other and more important objections to the judgment, than those which have been stated: 1st. The defendant, Hunter, having died, a *scire facias* to revive the suit, was served on his administrators in 1836. But there does not seem to have been any order of revivor against them, nor any order whatever in the suit, until June 1841, when the record states that "on motion of W. M. and M. F. M., executors of the plaintiff who has departed this life, it is ordered that this suit be revived in the name of said executors;" and it was then continued. There was no service of this order or of any further process on the administrators of Hunter, nor any other step in the suit until March 1844, when the record says: "The plaintiffs came by their attorneys, and the defendants though duly served with process, failed to appear, though solemnly called; on motion of the plaintiff," &c.,

A *sci. fa.* to revive, though duly served on the administrator of deceased def't, is not a revivor without any order to that effect, and an order for revivor in the name of plaintiff who afterwards died, if not served on the administrator of defendant, is not a revivor of the suit so as to authorize a proceeding to judgment.

an interlocutory judgment was rendered, and a jury sworn to enquire of damages, who found $1552, for which judgment was afterwards rendered. The plaintiff having died before any judgment interlocutory or final, against either the original defendant or his administrators, we are not aware of any statute or authorized practice which allows a revival of the suit, in the name of his executor or administrator by mere order, made on their *ex parte* motion without *scire facias* or other process served on the defendants. We are, therefore, of opinion that this part of the proceeding was irregular and ineffectual to authorize the judgment by default, which is consequently erroneous, and should on this ground, if there be no other, be reversed.

2. But a more radical objection than any of these, has been made by the assignment of errors, and as it presents a question which must arise in the future progress of the suit, it must now be decided. It is contended that by fair construction of the writing sued on, William S. Hunter was not personally bound in the stipulation for the conveyance of Stewart's title, but that it was intended to be, and should, therefore, be understood to be, the stipulation of Todd and Mary Hunter, for whom as their agent, Wm. S. Hunter contracted.

It is clear from the terms of the writing, that Wm. S. Hunter had not, and did not pretend to have the title which was to be conveyed; that he did not assume to have power to convey it, nor undertake that he would convey it, either as principal or agent. It is clear, also, that in making this contract, Wm. S. Hunter assumed to act as the agent of others and for them. And as he takes this character, both in the body of the instrument, and in the signature to it, and wherever he is mentioned or referred to, we must in construing the instrument, assume that he was in fact, and for the purposes of the contract, the agent of those for whom he professed to contract; and with power to bind them to the act which, according to the contract, was to be performed by them. Now it is to be observed, that the only stipulation on the part of Stewart's representatives or their agent, is for the doing of an act by them, which they

When an agent contracting for his principal, contracts for a relinquishment of title, which he professed not to hold, but recites to be in his principal, and which he stipulates his principal is to release upon the payment of a stipulated sum, and signs as agent, it shall be taken as the covenant of the principal and not the personal covenant of the agent.

alone could do, or authorize to be done, and which the agent did not pretend to have power to do nor undertake to do. But he had power to bind them to do it. And supposing as we must do, from the nature of the transaction, that the object on the part of Miller, was to have the act done, and to have a stipulation which would bind those who alone could do it, and thus secure its performance, there is no apparant motive why he should have desired the agent to bind himself, personally, for the performance of the act by his principals, when he could bind them directly to perform it. And certainly, there was no apparant motive on the part of the agent, for gratuitously entering into so unnecessary an engagement. Would it not have been somewhat singular, if Hunter having authority to bind his principals by contract, but no authority to convey for them, had made the contract simply in his own name, without referrence to his agency, and had undertaken to procure them to make the conveyance? Would Miller, being desirous of having a stipulation which would command the title, and knowing that Hunter had authority to make such stipulation, have been content with his mere personal undertaking, as above supposed? Or having a stipulation binding upon the principals, and, therefore, obligatory upon them to do all that he would, and what they alone could do, would he have required in addition, the personal undertaking of the agent? Or if there were circumstances, (of which there is no presumption,) such as the distance of the principals or their insolvency, which might have made it prudent and desirable to have the personal engagement of the agent, as a security for the attainment of the object of the contract, is it not almost certain that Miller would still have required an obligation upon the principals, and that the same considerations which rendered the engagement of the agent important, would have led to a distinct expression of it in the memorial of the contract? Allowing to the presumed motives of both Miller and Hunter, their natural and ordinary operation and effect in the transaction before us, we should expect to find in a contract with the agent, for the acquisition of the title of his principals, to be conveyed

by them, a stipulation binding them to make the conveyance, and if circumstances also induced the agent to stipulate personally, we should expect to find clear and explicit evidence of such a stipulation in the writing. If it be actually there, the motives for putting it there might be immaterial. But when the question is whether it is there or not, then the motives and relative position of the parties, (and especially as these are disclosed by the contract itself,) become important elements of consideration as means of ascertaining the intention of the parties, and giving the proper construction to the language which they have used.

The only legitimate object of all rules of interpretation and construction, is to ascertain and effectuate the intention of the parties. When that is apparent, the words must, if possible, be so understood as to give effect to the intention. We recur to the instrument in order to ascertain whether the stipulation for a conveyance by the representatives of Stewart, is to be understood as a covenant by them for their own act to be done, personally, or a covenant by their agent, that they shall do the act. We find that the instrument contains, as to this point, no formal word of covenant or agrement by any one, but while Miller expressly promises to pay, &c., the writing only declares that on payment being made, the representatives of Stewart are to convey, &c., which means nothing more nor less than that they "are bound to convey," or "will convey," or "agree to convey." If either of these forms of expression had been used, there could not have been a question, but that the covenant was intended and understood to be the covenant of the representatives of Stewart, made for them by their agent, and that he was to be bound only for the sufficiency of his authority. And as this intention would appear clearly on the face of the instrument, there would be no room for contention, and the covenant must have been considered as the sole covenant of the principals, binding exclusively upon them ; unless it could be said that this obvious intention of the parties must be frustrated, and the express language of the covenant wholly turned from its appropriate meaning, by the style or caption of the instru-

The only legitimate object and intention of all rules of construction is to ascertain the intention of the contracting parties; when that is apparent the words used must if possible be so understood as to give effect to the intention.

ment, stating it to be articles of agreement made between
Miller on the one part, and Wm. S. Hunter for &c. on
the other, and by the mode in which the names of the
principal and agent are signed. But the agreement,
whatever might be its terms, was in truth made between
Miller on the one side, and the agent on the other, and it
seems impossible that the mere statement of this fact,
which must exist whenever the contract is made through
the agency of another, should so decisively affect the ex-
press stipulations contained in it. The contract is in
fact, made by the agent. But the question is, whether
he binds himself personally, or binds his principal only ;
whether he contracts for his principal and in his name,
or contracts in his own name? If this question could be
determined simply either by the caption of the instru-
ment or by the mode of signature, or both, then as the
agency is declared in both, and each shows that the agent
is acting for his principal, and not for himself, and as the
name of the principal is inserted both in the caption and
the signature, this reference would seem to decide that
the contract was that of the principal and not of the
agent; and this inference could only be overthrown by
some language in the body of the instrument, which
either by its own express terms, or by necessary implica-
tion from a reference to the caption or signature, or both,
would show plainly that the agent intended to contract
personally, and not *merely* to bind his principal. This
reference, from the terms of the covenant to the caption
or signature, is made only for the purpose of ascertaining
who is bound. And if it clearly appears on the face of
the instrument, who is intended to be bound, and if the
mode of execution be such as that he may be bound, the
necessary consequence of the universal principle applica-
ble to contracts is, that he is bound, and that if such ap-
pear to be the intention of the parties, he alone is bound.
We are not aware, and should be loth to admit that there
is any authority establishing a contrary principle. And
although it is true that a certain, and the most certain
mode of precluding all question of liability on the part of
the agent, is not to introduce his name into the body or
caption of the instrument at all, and to sign the name of

the principal first, by himself as agent or attorney; we do not concede that there is or can be, by mere judicial authority, any established rule which determines that the agent is liable whenever, or because he describes the agreement as made between the other party and himself, agent for a named principal, and signs the instrument in the same way.

The rule is, that the attorney should act in the name of his principal, and not in his own name merely: (*Comb's case*, 3 *Coke*, 76, *pt.* 9.). There is no inflexible rule as to the mode in which this is to be done; and when both names are used both in the caption or body and signature of the instrument, it is a question of intention and construction, whether the act is done or the engagement made, in the name of the principal or of the agent. The terms of the covenant itself are commonly decisive as to intention. The description in the caption and the mode of signature, are referred to, either as aids in discovering the intention, or as determining whether the form of the instrument corresponds with this intention, so as that it may be carried out. If in view of all its parts, the instrument can be regarded as the deed or covenant of the party intended to be bound, it must, on principle, be so regarded. There is, as we believe, no difference of opinion with regard to the propriety of these positions, though there doubtless may be in their application. The caption of this instrument contains no stipulation or agreement, unless it be that Hunter is agent, &c. as described. It merely states that the agreement made between Miller on the one side and Hunter, agent, &c., on the other, witnesses or establishes what follows : that is, that Miller promises to pay, &c., to the said agent, upon which the principals are to convey, &c. To make this a personal covenant on the part of Hunter, that the principals shall convey, it is to be assumed that there is an elipsis to be supplied as follows: upon which "the said Hunter or the said agent undertakes or promises," that the principals shall convey, or some phrase of similar import. It is said that such words should be supplied, because the instrument imports an agreement between Miller, and Hunter, agent, &c. But can any thing more be

HUNTER'S AD'RS.
*vs*
MILLER'S EX'RS.

The agent should contract in the name of his principal and not in his own name: (*Coke* 76, *part* 9,) but there is no inflexible rule as to the manner in which this is to be done. When both names are in the caption, body and signature, it is a question of intention and construction, whether the act is done in the name of the principal or the agent. The terms of the instrument are the most decisive notice of the intention.

HUNTER'S AD'RS.
*vs*
MILLER'S EX'RS.

implied than that Hunter, as agent for Todd, &c., agrees that they shall convey. Would not that be the necessary implication if the clause had been "upon which the said Todd, &c. are hereby bound to convey?" It is certain that Hunter agreed that his principals should convey and that he intended to bind them to do so. The question is, whether he has bound himself instead of them, or even with them. If the form of the caption had been, "articles, &c. between Miller of the first part and Todd, &c. by their agent, Hunter, of the second part, witnesseth," &c. it would have been just as certain as it is now, that the agent agreed that his principals should convey; and yet this agreement on his part, would not have bound him for their doing the act, if he had, by the terms of the covenant, bound them; and no more should it bind him, if as the instrument now is, he has bound them. The most direct and simple mode of supplying the elipsis, if there be one, and it is the mode most obviously conformable to the intention of the parties as deducible from their motives and position, as well as from the general tenor and object of the instrument, is merely to insert the word "bound;" "upon which the said representatives are bound to convey." This would merely supply that which is palpably implied. It would not alter the legal effect of the covenant, but would only express more fully, that which without the word "bound," is necessarily understood, if in accordance with the manifest purpose of the instrument. There is no necessity for supplying other words than this, nor indeed for supplying this; and without supplying other words or changing the entire phraseology of the clause, there is no personal covenant, either express or implied, on the part of Hunter, unless the mode of signature binds him instead of his principals.

It cannot escape notice, as tending to justify the conclusion that it was not intended, that there should be a personal covenant on the part of Hunter, that while Miller expressly promised to do what was to be done on his part, viz: to pay the money, the mode of expression is immediately and decidedly changed in stating what is to be done on the other part. The duty on Miller's part, and the person who undertakes its performance, are not expressed

Cases sustaining the principles recognized in this case.

in general terms, to be helped out by implication from the caption, &c; he expressly promises. If Hunter was to do any thing, would it not also have been expressed? And does not the failure to say that he promises or is to do any thing, show clearly that in binding his principals, he did all that he was to do, except to receive the money? "Upon which the representatives of Stewart are to convey." This binds them to convey if Hunter had power. It is precisely equivalent to the words, "upon which the representatives, &c., are bound to convey or agree to convey." It is their covenant, and if it had been, "upon which the said Hunter agent, &c., binds them to convey," or "upon which they shall convey," the case would not have been materially different. It is their covenant upon the face of the instrument, if it be of such form as that it can be taken as their act by their agent. Does the mode of signature then present any objection to this construction? In the case of *Webb* vs *Burke*, (5 *B. Monroe*, 54,) it is said to be well settled, that if in the body of a writing A. B., as agent binds C. D., and then signs it A. B. agent for C. D., the writing is that of C. D. In *Chitty on Contracts, note* 1, *page* 229, (*Springfield edition*, 1842,) we find a referrence to *Dining* vs *Bullock*, (1 *Black*. 241.) as establishing that if a bond set forth, that A. B., as agent for C. D., binds the said C. D., to make title, &c., and it be executed thus, "A. B., seal, agent for C. D.," (precisely as in the present case,) it is the deed of C. D., provided the agents authority is sufficient. The same note refers to many cases as establishing, that if the name of the principal be signed, it is immaterial whether it be before or after that of the agent. Among these cases, that of *Elivell* vs *Shaw*, (16 *Mass. R.* 42,) decides that a deed of conveyance reciting a power of attorney, but purporting on its face, to be the act of the attorney in virtue of the power, as "I, the said Joshua, by virtue of the power aforesaid, do bargain, sell," &c., and signed and sealed by him alone, without the name of the principal, or the discriptive title of agent or attorney, was the act of the attorney and not of the principal, and did not pass the title.

HUNTER'S AD'RS.
*vs*
MILLER'S EX'RS.

The case of *Stackpole* vs *Arnold*, (11 *Mass. Rep.* 37,) decides that a note signed "Z. Cook," and another signed "Cook & Foster," without reference either in the body or signature of the notes, to any other person as principal, could not, by averment and proof, be made the notes of Arnold. But it is admitted that if signed "Z. Cook for J. Arnold," and "Cook & Foster for J. Arnold," they might have been the notes of Arnold.

In the case of *Wilks* vs *Back*, (2 *East*, 142,) it was decided that Brown was bound by a submission bond signed in this manner: "For James Brown, Mathias Wilks, [L. s.]" Grose Justice, alluding to the rule that the attorney must execute his power in the name of his principal and not in his own name, said "here it was so done, for where is the difference between signing J. B. by M. W., his attorney, (which must be admitted to be good,) and M. W. for J. B.; in either case the act of sealing and delivery is done in the name of the principal and by his authority; whether the attorney put his name first or last, cannot affect the validity of the act done." And the other two Justices expressed substantially the same views.

Cases cited and commented upon bearing upon this case.

There have been, it is true, several cases in this Court, in which upon a comparison of the terms used in the body of an instrument, with the mode of execution, the obligation has been decided to rest upon the agent and not upon the principal. Perhaps the strongest of these cases is that of *Offutt* vs *Ayres*, (7 *Monroe*, 356.) In that case it was decided, the Chief Justice dissenting, that the note was the obligation of W. B. Ayres, and not B. Ayres; it was of the following tenor: "I promise to pay S. O. $114, for the hire of Harry." Signed, "For B. Ayres, W. B. Ayres." The question was, who promised, or to which of the persons named at the bottom, the pronoun I, in the body of the note, referred; and upon grammatical construction, it was decided that W. B. Ayres promised to pay for B. Ayres, as he might well do. But there was nothing in the body of the note to show that W. B. A. acted as agent, or that he professed to bind B. A. to pay, or that B. A. was to pay; and the signature is not entirely unequivocal. Here every thing is different, Hunter

describes himself as agent every where. There is no pronoun I or he, which by reference can make him the promisor; and the act to be done, viz: the conveyance, is expressly to be done by the principals.

But the more recent case of *Cooke & Co.* vs *Sandford*, also in this Court, decides that a note of the following tenor: "We promise to pay to J. S., &c. Signed V. M. for Cook & Co." was upon its face, the note of Cook *& Co.*, (*3 Dana*, 237.) And in the case of *Wright, &c.* vs *Roberts*, (*manuscript opinion*, 1845,) where the note was of this tenor: "I have bought of Wright & Ward from 8 to 10 tons of hemp, at $2 50 per hundred, one load to be delivered to-morrow, the balance when notified, to be paid for on delivery. Signed, *W. B. Roberts,*
*Agent for O. F. Payne.*"

The action was brought against Roberts, and on demurrer it was decided to be the covenant of the principal and not of the agent. In the case of *Owings* vs *Grubbs*, (6 *J. J. Marshall*, 31,) where the writing was signed "For Tho. D. Owings, James Grubbs." Grubbs was allowed, on the plea of *non est factum*, to introduce parol evidence that the instrument was delivered as the deed of Owings, and not of himself. And evidence of a similar import was allowed in the case of *Webb* vs *Burke*, (6 *B. Monroe*, 51,) where the note was signed,
*John B. Burke, agent*
*for Samuel Burke.*

We would remark, upon the case of *Owings* vs *Grubbs*, that as the note imports merely an acknowledgment of a certain sum being due to R. H. Owings, for value received, and there is no express promise to pay, it might, and according to the case of *Wright* vs *Roberts*, should, upon demurrer, have been held to be the note of T. D. Owings, the principal, since the debt was acknowledged to be due from him, and the implied promise to pay would be by him, if the agent had authority to bind him by the acknowledgment.

The case of *Wright* vs *Roberts* goes upon the ground that there is no express promise by the agent, to pay; that the payment was impliedly to be made by the princi-

pal, and therefore, that the promise to pay should be implied against him.

In this case there is no promise or covenant by the agent. The conveyance is expressly to be made by the principals, and the covenant to convey, if not express on their part, should, in pursuance of the manifest intention, be implied against them and not against the agent. The circumstance referred to, that whether this covenant has been literally performed or not, the lapse of time authorizes the presumption that the covenant itself has brought substantially the same benefit that its performance would have done, though entitled to no weight in the construction of the instrument, may suggest the reflection that our decision of the law is not at war with the apparent justice of the case.

On the whole, therefore, we are of opinion that Hunter was not personally bound by the stipulation for conveyance, but only for its validity against his principals; and that on this ground also, the judgment is erroneous.

Wherefore, the judgment is reversed and the cause remanded for further proceedings.

*Woolley and Kinkead* for plaintiffs: *Harlan & Craddock and Robertson* for defendants.

---

PET. & SUM.

*Case 143.*

July 9.

The case stated.