JUDGE STITES
delivered the opinion of the court:
This action was brought by the appellees against appellants and the justices of the county court of Breckinridge county, *75 to enforce the payment of the last two installments mentioned in the following contract:
“We, John Hardin, W. Hambleton, S. C. Pate, and David R. Murray, commissioners appointed by the county court of Breckin-ridge to let out, to contract, and superintend the building of a new bridge across Clover creek, at Cloverport, on the abutments of the old bridge, have contracted with Carothers & Applegate for the building of the same on Carothers’ late improved plan, the drawing of which is before us, and marked A, and made part of this contract. The specifications of the work are as follows: The said Carothers & Applegate of the first part, agree to build a double track bridge one hundred and eighty-five feet long and twenty-two and a half feet wide, from out to out; well weather-boarded, with a g-ood shingle roof; the weather-boarding to be dressed and painted, and also the ends, with two coats of paint; the floor to be laid with oak plank of two and a half inches thickness. All the timbers used in the construction of the bridge are to be sound and clear of any injurious imperfections. The party of the first part further binds themselves to build up tire present old abutments an additional height sufficient to make the floor of the new bridge four feet higher than the floor of the present old bridge. The stone masonry to be well fitted together and grouted after the manner and style of the old abutments; and to make the necessary embankments for the travel over the new bridge. All of which work the party of the first part agrees to do and perform in a strong, substantial, and workmanlike manner, by the 25th December next. For which the party of the second part agrees to examine the work, and if finished according to contract, to receive the bridge thus finished, and give Carothers & Applegate a certificate stating the fact. For all of which work the party of the second part agrees to pay to the party of the first part three thousand five hundred dollars in the following way: One thousand to be paid when the bridge is finished, one thousand dollars in October, 1854; and the remaining fifteen hundred dollars in October, 1855.
*76 “In testimony, whereof, the parties have hereunto affixed their hands and seals, this 29th day of September, 1853.
“ CaROtiieRS & Applegate, [seal.]
“David R. Mueeay,
“W. Hambleton,
“John Hardin,
“S. C. Pate,
“ Commissioners.’
The plaintiffs averred that they had complied with their part of the contract; that the bridge had been built and received by the defendants, Murray, Hambleton, Hardin, and Pate, and a certificate of such completion and reception given according to the contract; that one thousand dollars had been paid; but that the defendants had failed and refused to pay the remainder ; and a judgment was sought, therefore, against the commissioners individually, and the county court, for the same.
An amended petition was subsequently filed, alleging that the order of court under which appellants acted was illegal, and conferred no authority upon them, because it was made by the county judge alone, without the concurrence of a majority of the justices of the county.
The commissioners, as well as the members of the county court, demurred severally to the petition upon various grounds; but relied mainly that there was no cause of action against the commissioners; and if any against the county court, that the proceeding was erroneous, and should have been by rule for a mandamus.
It was held by the circuit court on demurrer, that there was no cause of action against the justices of the county court, and the petition as to them dismissed; but that the plaintiffs had the right to look to the commissioners individually upon the contract, and their demurrer was accordingly overruled. To this action of the circuit court exceptions were taken by both parties.
The commissioners then answered, denying their liability under the contract, and averred that the contract was made by them as commissioners of the county court of Breckinridge, by and under orders of said court, made severally in August and *77 September; and that by subsequent orders of said court, made in October, 1853, their action as commissioners in making said contract had been approved of and ratified.
They denied that plaintiffs had ever looked to them individually upon said contract, but averred that they had knowledge of said orders of court, and contracted with the commissioners as agents of the court acting under its authority, and looked to the court, and not the commissioners, for payment.
They furthermore averred that the bridge was not built in the manner and style stipulated in the contract, and state in what particulars it was defective. And, also, that the certificate or receipt exhibited by plaintiffs was procured by their fraud and misrepresentations respecting the bridge — in concealing its defects, and falsely representing the quality of materials used and work done; and they ask for a judgment over for the alleged fraud.
The answer was held insufficient on demurrer, and the defendants excepted; and, saying nothing further, a judgment was rendered against them for the remainder due on the contract; and from that judgment they have appealed.
The first question to be considered arises upon the demurrer to the petition, and involves the personal liability of appellants upon the contract.
It is obvious from the instrument sued on, that it was intended by the parties to embody in writing a contract between appel-lees, as undertakers of a public work ordered to be constructed by the county court of Breckinridge county, and appellants, as agents or “ commissioners appointed by the county court of Breckinridge to let out, contract, and superintend” the work, undertaken. This is apparent throughout the instrument, from its commencement to the signatures of the appellants, which are subscribed together, and have affixed to them, as though in abundant caution, the' character in which they act, and which had been formally announced in the commencement of the paper. It needs no remark to demonstrate what is evident from the contract itself, that is, that appellants were contracting as public agents, and that this fact was known to appellees.
The rule with regard to the liability of persons acting as *78 agents for and in behalf of the government or the public, is materially different from that which applies to cases of mere , private agency. In general, an agent contracting for the government is not personally bound by such a contract, even though he would be by the terms of the contract in a mere private agency.
The reason of the distinction is said to be, “ that it is not to be presumed, either that the public agent means to bind himself personally in acting as a functionary of the government, or that the party dealing with him in his public character, means to rely on his individual responsibility. On the contrary, the natural presumption in such cases is, that the contract was made upon the credit and responsibility of the government itself, as possessing an entire ability to fulfill all its just contracts far beyond that of any private man; and that it is ready in good faith to fulfill them with punctilious promptitude, and in a spirit of liberal courtesy. Great public inconveniences would result from a different doctrine, considering the various public functionaries which the government must employ in order to transact its ordinary business and operations; and many persons would be deterred from accepting offices of trust under the government, if they were held personally liable upon all their official contracts.” (1st Term Reports, 172; 12th Wendell, 179; 2d Kents Com., 824; Story’s Agency, sections 302, 303, 304.)
This principle applies alike to all contracts executed by government or public agents in their own names, and purporting to be made by them in behalf of the government or public, whether simple, parol or written, or under seal; for the like presumption is indulged that the parties contract, not personally, but merely officially, within the sphere of their appropriate duties. (Story’s Agency, 307.)
But this general and well settled rule furnishes no help to public functionaries or agents in cases where they stipulate to be held personally liable, nor does it impose upon them any restriction to prevent their assuming such liability. They may waive their official immunity and assume a personal liability, and in such cases the rule of course does not apply.
In the absence of such personal undertaking on the part of *79 a public agent, the presumption referred to protects him, until it is repelled by circumstances clearly establishing an intention between the parties to create and rely upon a personal responsibility on the part of the agent.
Is there here an express undertaking on the part of the commissioners to hold themselves personally responsible; or are there any facts or circumstances, alleged or shown, which clearly establish the intention necessary to create such liability?
In some of the earlier cases, this court went a good ways to enforce written contracts according to a strict grammatical construction; but the later cases have departed from this rigid rule, and in all cases now the inquiry is directed to the ascertainment of the intent of the parties, to be gathered, not so much from any particular rule, as from what appears in the entire instrument.
In Hunter vs. Miller’s ex’ors, (6 B. Mon., 619,) all the cases bearing upon this question are reviewed, and the principle there announced, that “the only legitimate object of all rules of interpretation and construction, is to ascertain and effectuate the intention of the parties. When that is apparent, the words must, if possible, be so understood as to give effect to such intention.”
The same principle has been recognized and applied in many subsequent cases.
In Carson vs. Lucas, (13 B. Mon., 213,) the writing sued on was as follows:
“ Due W. S. D. Megowan ninety-six dollars and sixty cents, balance due for wages as clerk of steamer Kentucky No. 2.
“F. P. Carson, Captain.”
It was held that the captain was not liable personally, because the paper showed it was not his debt, but the debt of the boat. If, however, the court say, “ it had failed to show what indebtedness it was, the implication would have been that it was Carson’s, and he would have been liable.”
In Taylor, Shelby, &c., vs. Williams, (17 B. Mon., 492,) the action was against Williams as drawer of the following order:
*80 “ $320. Feb. 12, 1855.
“ Thos. B. Posey, Tr. Grand Division of Kentucky, pay to the order of A. W. Elder three hundred and twenty dollars in full of copies of Ky. New Era, ordered to be sent General D. G. W. Patriarchs at Jan. session of G. Division.
G. W. Williams, G. W. P.
“Attest, L. Hord, G. S.”
Williams was held not to be liable, upon the ground that it was manifest from the order that it was drawn by him as an officer iof, a' corporation.; and that, wherever it can, from the whole instrument, be gathered that it was intended to bind the principal and not the agent, such construction should be adopted, however, informally such intent may be expressed.
In Church vs. Graham, {MB. Opinion, June Term, 1857,) the action was against the trustees of a church upon the following obligation:
“ Due James Church $215 24, for balance on meeting house, and services rendered this 3d day February, 1849.
“John F. Graham,
“John S. Hawkins,
“ L. L. Sullivan,
“A. B. Bacon,
■ Trustees.
“ As trustees for Christian church at Pleasant Hill.”
The makers were held not liable personally; and in that case it was said “ that it is now the settled doctrine that the obligors in a note or contract shall not be deemed to be personally liable therefor, if it- appear from the face of the writing that it was not executed for a debt which they owed, and that it was not intended by the parties that they should be personally bound.” Which conforms to the principle as announced by Chancellor Kent, “ That the inquiry in all the cases is to whom was the credit, in the contemplation of the parties, intended to be given.” (2d Comm., 824.)
Here the contract, as already said, was made by appellants as public agents for the construction of a public work, and made, as the contract shows, in pursuance of an order of court, and signed by them as commissioners. “ It was not executed for a debt they owed,” nor was it concerning a matter about which *81 they were more interested (so far as the record shows) than any other citizen of the county. And we have no hesitation in saying that the credit was given, not to appellants personally, but to the county court for whom they were acting. This, in our opinion, is apparent from the instrument itself; and so far as the record shows any attendant facts, they all tend to fortify this view and repel any presumption or inference at all inconsistent with it.
But it is contended that appellants are liable bees had no sufficient authority from the court to tract.
It seems, from an amended petition, that thl tember 19, 1853, under which they made the||<\Qftimcr, 'was made by the county judge without the concurreif ity of the justices of the county, and it is arj order conferred no authority upon the commission^ they have, by thus acting without authority, subjected themselves to personal liability to the contractors.
Conceding the invalidity of the order, a point not now decided, still it does not necessarily follow that the appellants are personally liable.
The general rule is, that whenever a party assumes to act as agent for another, if he has no authority, or if he exceeds his authority, he will be personally liable to him with whom he is dealing on account of his principal, for the reason that he holds himself out as having authority, and thereby induces the other party into the engagement. But this rule is founded, upon the supposition that the want of authority is unknown to the other party, or, if known, that the agent undertakes to guarantee a ratification of the act. And where the want of authority is known, or may be presumed to have been known, and it is clear that the agent did not undertake to guarantee a ratification, it results that the agent is not personally responsible. (Story’s Agency, 306; Kents Com., 2d vol., 827.)
Here it is manifest from the contract that the appellees had knowledge of the capacity in which appellants were contracting. The fact that they were acting under an order of the county court was stated in the contract. The extent of their *82 authority under the order was a matter as much within their knowledge as that of the appellants. They had notice of its existence, and if they did not inform themselves of its character, it was their own laches, and they cannot now complain. The notice was sufficient to put them on inquiry, and the law presumes they were apprised of the extent and effect of the order. We have already seen that there was no express undertaking, and inasmuch as the want of authority, if it was wanting, was as well known, or must be presumed to have been as well known, to appellees as appellants, it results that the rule in reference to the liability of agents acting without authority, has no application to this case, and that appellants are not liable on that ground. (Kents Com., 2d vol., 818; Story's Agency, 307; 22 Conn. Rep., 384.)
With regard to the sufficiency of the answer, we shall only say, that the distinct allegations of fraud and misrepresentation with regard to the procurement of the receipt or certificate, when considered with those in reference to the defectiveness of the bridge and materials, are sufficient, if true, to interpose an obstacle to a recovery on the contract, and that the last answer, containing those allegations, should, in our opinion, have been held good on demurrer.
For the reasons indicated, we are of opinion that the court erred in overruling appellants’ demurrer to the petition, and also erred in sustaining the demurrer to their answer.
Wherefore, the judgment is reversed, and cause remanded for further proceedings not inconsistent with this opinion.