# HAMPSHIRE COUNTY.

## SAMUEL PINCH *vs.* EDWARD ANTHONY & others.

If the owners of mineral lands enter into a written agreement with another person, reciting their purpose either to sell the lands or form a joint stock company for working the mines thereon, and promising, in consideration of services rendered and to be rendered by him to pay to him a certain sum " out of the proceeds of the sale of said lands, if the same shall be sold, or, if the lands shall not be sold, and a company shall be formed for working the mines thereon," then to convey to him stock to that amount, " it being understood and agreed by and between the parties hereto that the foregoing amount, whether of cash or stock, is to be a charge on the joint estate " of the owners; and he, in consideration of the foregoing agreements, promises to remain in their service as long as they may require, not exceeding one year, for a salary of $100 per month and a house and land free of rent;

the owners of the land are not bound to sell the same or to form a joint stock company until by the exercise of reasonable diligence they are able to do so advantageously, having reference to the interests of all the parties; and until such sale or the formation of such a company, or the existence of some negligence on their part, he has no claim against them, except for the stipulated salary.

An objection to a supplemental bill in equity on the ground that it seeks to maintain the suit upon facts which have occurred since the filing of the original bill is waived by omitting to demur to it upon that ground, and consenting to go into a full hearing before a master upon the merits of the case as set forth in the original and supplemental bill.

BILL IN EQUITY, filed April 16th 1861, alleging that in 1849 the plaintiff was a skilful miner employed at Crown Point, and was induced by persons who owned lands in Northampton, Southampton, Easthampton and Westhampton, to leave his employment for the purpose of conducting mining operations upon said lands; that those persons, after executing to the plaintiff a mortgage on the mineral rights in said lands to secure the sum of $1500, for his services and moneys agreed to be paid by him, conveyed the premises to Samuel Coit, who, in consideration of the plaintiff's skill and labor in conducting mining operations thereon, and of moneys advanced by him, executed to the plaintiff another mortgage on said mineral rights to secure the sum of $5000; that afterwards, in 1852, Edward Anthony purchased the premises in behalf of himself and Sandford Coley, Albert W. Wright and Edwin C. Hamilton, (who were all made defendants,) and received a deed thereof, and that, on the 27th of October 1853, said Anthony and his associates, as parties of the first part, entered into an agreement with the plaintiff, as the party of the second part, the material parts of which are set forth in the margin.*

* Whereas the parties of the first part are joint owners of certain mineral lands situated in Southampton, Easthampton and Westhampton, in Hampshire county, in the state of Massachusetts, and which said property is now standing in the name of Edward Anthony; and whereas it is proposed either to sell said mineral lands or to form a joint stock company for the purpose of working the mines on said lands; and whereas the parties of the first part have agreed, in consideration of the services rendered and to be rendered by the said Samuel Pinch, that he the said Samuel Pinch shall have an interest in the proceeds of the sale of said lands, if the same shall be sold, or, if a joint stock company shall be formed, then that he shall have a certain amount of the stock of the company

The bill further alleged that the plaintiff entered the service of the defendants, and continued therein so long as his services were required, and until the filing of this bill, although since 1854 the defendants have abandoned mining operations on said lands; and that he is entitled to maintain a charge and lien upon said lands for the sum of $6500, and interest from the date of the agreement, and to have the lands sold, and the proceeds applied in payment of his claim.

The plaintiff afterwards filed a supplemental bill, alleging that on the 26th of February 1863 the said Anthony, with a view to the formation of a joint stock company, conveyed the premises to Stephen Hill, Jr., who shortly thereafter conveyed the same to the "Manhan Silver Lead Mining Company," which the plaintiff believes to be a joint stock company; that since the conveyance to Hill, the plaintiff, at Hill's request, has devoted his attention to the development of said mines, and Hill has

---

now, therefore, this agreement witnesseth, that the said parties of the first part, in consideration of the foregoing agreement, and in further consideration of one dollar to each of them in hand paid, the receipt whereof is hereby acknowledged, hereby agree to pay or cause to be paid to the said Samuel Pinch, his heirs or assigns, out of the proceeds of the sale of said lands, if the same shall be sold, the sum of $6500; or, if the said lands shall not be sold, and a company shall be formed for the purpose of working the mines thereon, then and in that case to convey or cause to be conveyed unto the said Samuel Pinch, his heirs or assigns, full paid up stock in said company, not liable to assessment, to the amount of $6500, at the par value of said stock; it being understood and agreed by and between the parties hereto that [of] the foregoing amount of $6500, the sum of $5000, whether of cash or stock, is to be a charge on the joint estate of the parties of the first part in proportion to their respective interests, and the remaining $1500 is to be a charge on the separate estate of Albert W. Wright. And the said Samuel Pinch on his part agrees, in consideration of the foregoing agreements, to remain and continue in the employ of the parties of the first part so long as they shall require his services, but not exceeding one year from the date hereof, for the same salary and compensation that has been heretofore paid to him, to wit, $100 per month, and the house and lands now occupied by him rent free; and if his services shall not be required for the full term of one year, he hereby agrees to leave the employ of the parties of the first part, and surrender the possession of the house and lands to them at any time, after receiving one month's notice from them."

frequently assured the plaintiff that there should be a speedy and satisfactory settlement of his claim, but that such settlement has never been made. The plaintiff therefore prayed that said Hill and Manhan Silver Lead Mining Company might be made defendants, and that he might have such relief as he might be entitled to in equity. Certain other allegations in the supplemental bill are set forth in the opinion.

After the demurrer filed in this case had been overruled, (see 8 Allen, 536,) the defendants filed answers, and the case was referred to a master, who made a report thereon, and the case was reserved for the determination of the whole court. As the decision of the case upon the merits involved no question of law, but rested upon the plaintiff's failure to establish by proof a right to equitable relief, as stated in the opinion, the facts are not here reported.

*C. Delano*, for the plaintiff. The original bill seeks to enforce the plaintiff's claim by compelling a sale of the land. The supplemental bill, without waiving rights or remedies already accrued, seeks to ascertain whether the plaintiff, by reason of the new state of things, is compelled to accept what the defendants have reserved for him.

The plaintiff is still entitled to have a sale, and an application of the proceeds. His lien is established. 8 Allen, 536. The Manhan Company has no title whatever. *Danforth* v. *Penny*, 3 Met. 564. *Gold* v. *Housatonic Railroad*, 1 Gray, 424. *Blackstone Manuf. Co.* v. *Blackstone*, 13 Gray, 488. *Erickson* v. *Nesmith*, 4 Allen, 233. *Farnum* v. *Blackstone Canal*, 1 Sumner, 46. *Bank of Augusta* v. *Earle*, 13 Pet. 519. *Runyan* v. *Coster*, 14 Pet. 122. The great delay to organize a company was unreasonable laches. The burden of showing an organization of a corporation was on the defendants, and they have failed to show it. The laches having entitled the plaintiff to a sale, and there being nothing shown to defeat this right, a decree for a sale should be entered, unless the sum due to him shall be paid within a specified time.

It is too late to object to the supplemental bill. No objection was made to its being filed and the defendants joined in a

general demurrer to both bills, without assigning as a cause of demurrer that it introduced a new case. They also joined in a general answer. See Story Eq. Pl. §§ 338 *a*, 526, 528; *Clark* v. *Flint*, 22 Pick. 231, 237; *Underhill* v. *Van Cortlandt*, 2 Johns. Ch. 369; *Ludlow* v. *Simond*, 2 Caines Cas. 40, 56. The objection to the supplemental bill was never well founded. Story Eq. Pl. §§ 332–339, 352, 903–905. *Crompton* v. *Wombwell*, 4 Sim. 628. *Colclough* v. *Evans*, Ib. 76. *Jenkins* v. *Eldredge*, 3 Story R. 310. *Wood* v. *Mann*, 2 Sumner, 316, 331. *Hobson* v. *McArthur*, 16 Pet. 182, 194.

*G. T. Davis*, for the defendants.

CHAPMAN, J. If the plaintiff had any cause of action when he filed his original bill, it arose out of the contract of October 27th 1853. It is necessary, therefore, to ascertain the meaning of this contract; and as the parties construe it differently, and its terms are not expressed with fulness and clearness, it is necessary to look into all its parts. Its expressed purpose and the consideration for the defendant's promise will aid us in understanding the promise and giving to it a just interpretation

The articles of agreement are between Anthony, Hamilton, Coley and Wright, who are called parties of the first part, and the plaintiff, who is the party of the second part. It recites that the parties of the first part are joint owners of certain mineral lands in Hampshire County; that the property stands in the name of Anthony; and that it is proposed either to sell said mineral lands or to form a joint stock company for the purpose of working the mines on said lands.

Having expressed this general purpose, it next recites that the parties of the first part have agreed, in consideration of the services rendered and to be rendered by the plaintiff, that he shall have an interest in the proceeds of the sale if the lands are sold, or, if a joint stock company shall be formed, then he shall have a certain amount of the stock of the company.

The services which are thus referred to are not ordinary services, and his interest in the proceeds of the sale or of the joint stock company is not to be regarded as wages; for it is agreed that he shall remain in the employment of the company as long

as they shall require his services, for the same salary and compensation that have been heretofore paid to him, to wit, $100 per month, and the house and lands occupied by him rent free. This compensation was to be paid absolutely, and has been paid. The services referred to in the above recital, to the amount of $5000, must therefore be extra services, and must refer to efforts to sell the lands as mineral lands, or to form a joint stock company by inducing capitalists to join the parties. Parol evidence is admissible to prove what these services were specifically, for the ambiguity in the reference to them is latent.

It appears by the master's report that the plaintiff is an Englishman, and acquainted with mining; that he had entered into a correspondence with an English mining journal, and brought to the notice of the proprietors one Richardson, who at their request came to Northampton and was made superintendent of the mines, and made some efforts to sell their mining lands to parties in England. There had been some expectation of making a sale of the lands for a very large profit, and the plaintiff was to continue his efforts to make a sale or form a joint stock company.

We then come to the promise. It is, that " out of the proceeds of the sale of said lands, if the same shall be sold," they will pay or cause to be paid to the plaintiff, his heirs or assigns, the sum of $6500; " or, if the said lands shall not be sold, and a company shall be formed for the purpose of working the mines thereon," then they will cause to be conveyed to the plaintiff, his heirs or assigns, full paid up stock, not liable to assessment, to the amount of $6500 at par value. The land is made subject to a charge for the fulfilment of this agreement, to the amount of $5000, and the separate estate of Wright is made subject to a charge for $1500, which was not a charge upon the other parties, nor for services rendered to them ; and the plaintiff's bill is brought to enforce the lien and compel the specific performance of the agreement.

When the bill was filed, the parties had not sold the property, nor procured a joint stock company to be formed for working the mines, although more than seven years had elapsed since the

date of the agreement; and the plaintiff contends that he has a right to compel the defendants to make a sale, and pay him his money out of the proceeds. The defendants reply that neither they nor the plaintiff have succeeded in selling the lands as mineral lands, nor in procuring capitalists to join them in forming a company for working the mines. They allege that the purchase of their lands and mining rights and the working of the same have cost them about $35,000, and they have paid considerable sums to Richardson. They have offered their property for sale for $10,000, and have been ready to sell it, and would have sold it for a less price; they have not failed in judgment or diligence in endeavoring to sell the same; but they have never received a cash offer, and the lands have been unsalable for mining purposes, and for other purposes they would not bring the price paid for them. The master's report finds these allegations to be true, and thereupon the question arises whether the defendants were by the terms of their contract bound to sell the lands before it should be for the mutual interest of all parties to make such sale. The plaintiff contends that they are bound to sell them at all events after the lapse of so much time. But the court are of opinion that the spirit of the agreement and a just construction of the promise, which is merely contingent, and not absolute, require nothing more than that the defendants should consult the joint interest of all the parties, and that they are not bound by it to disregard their own interest, either in making a sale or forming a joint stock company. When the bill was filed, it had not been in the power of the defendants by any reasonable efforts to make sale of the lands for mining purposes, or to form a company to work the mines, and therefore they had not been guilty of any default or neglect in respect to their agreement. If they had made an absolute sale of the lands, the terms of their agreement would entitle the plaintiff to payment of his claim to the amount received; but if they had made a mere conveyance as one step towards getting up a joint stock company, he would not be entitled either to his money or his stock till the company should be completely organized, and the certificates of stock be ready for delivery to the stockholders.

It appears, then, that at the time of filing the original bill the plaintiff had no cause of action. But the plaintiff afterwards filed a supplemental bill setting forth certain facts that had occurred during the pendency of the suit. It is now objected that the facts set forth in this bill cannot be considered in this suit, but that this bill should be dismissed, and the plaintiff be left to bring a new suit if he has good cause of action.

We have found no authority that goes so far as to authorize a party, who has no cause of action at the time of filing his original bill, to file a supplemental bill in order to maintain his suit upon a cause of action that accrued after the original bill was filed, even though it arose out of the same transaction that was the subject of the original bill. It would seem to be contrary to principle to allow this to be done. *Milner* v. *Milner*, 2 Edw. R. 114, is an authority against allowing a new cause of action to be stated in a supplemental bill. But the plaintiff may by means of a supplemental bill introduce into his case facts that have occurred since the original bill was filed. The extent to which this may be done is not definitely settled. But if he goes too far in this respect, the defendant has opportunity to object to it when leave is asked to file the supplemental bill; *Pedrick* v. *White*, 1 Met. 76; or by demurrer to the bill for that cause after it is filed. In this case the defendants did demur, but did not present this as a ground of demurrer. 8 Allen, 536. The cause was sent to a master, and was recommitted to him by consent of both parties for the purpose of being fully heard upon its merits, and it has been so heard, and his report embraces every matter that would have been needful if a new bill had been filed. The objection to the supplemental bill ought therefore to be regarded as waived. *Pingree* v. *Coffin*, 12 Gray, 288, 323. Story's Eq. Pl. § 528, and *note*. *Underhill* v. *Van Cortlandt*, 2 Johns. Ch. 369.

The plaintiff is entitled, therefore, to have his case considered and determined upon the allegations of his bill and supplemental bill taken together.

The original bill sets forth the title to the land and the contract above mentioned · alleges that the plaintiff devoted himself

to the service of Anthony and his associates; that the $5000 constituted a charge upon the lands of Anthony, Coley, Hamilton and Wright, and the $1500 constituted a charge upon the estate of Wright; avers that he has a right to have the land sold and the proceeds applied to the payment of his claim, and prays for a sale for that purpose. The supplemental bill, reciting certain pretences which the defendants set up, alleges that, on or about the 26th of February 1863, Anthony, by his deed of that date, upon certain good and valuable considerations, and especially with a view to the formation of a joint stock company or incorporated association, convéyed to Stephen Hill, Jr., of New York, the mineral lands aforesaid, and that Hill agreed to assume and pay whatever claims the plaintiff should establish in this suit, and save Anthony harmless therefrom; that on or about the 24th of April 1863 Hill conveyed the lands to a certain company purporting to be " the Manhan Silver Lead Mining Company," for the nominal consideration of $500,000; but whether the consideration is real or not he does not know. He avers that he believes it to be a joint stock company, or incorporated association; that Hill is a member and holds shares in the same and has been active in directing its operations, and has frequently remitted funds to the plaintiff for advancing its operations; that he has devoted his time, at Hill's request, to the development of the mines, and has requested Hill to pay him the money or deliver to him the paid up stock. He makes Hill and the company parties to the bill, and seeks general relief, waiving an answer under oath.

If the plaintiff is entitled to any relief upon these allegations, it should be by a decree for the conveyance to him of the stock in the Manhan Silver Lead Mining Company to which he is entitled by his contract.

The answer of the defendants admits the conveyance to Hill as alleged, and avers a readiness to pay the plaintiff whatever money or stock he is entitled to. It denies, however, that he has made any demand on them, and on this subject the report finds that no demand has been made, except that within two years after the plaintiff left the service of the original defendants

he demanded of them a settlement of his claims. As the case stands, however, this difficulty may be passed over. The answer alleges that the land is not worth more than $7500 ; but admits that the capital stock is $500,000, and that this land has been conveyed to the company at that price, thereby making the stock full paid up stock. But by a fair interpretation of the agreement the plaintiff is entitled to stock paid up in cash or its equivalent. This stock is not of that character. It is suggested in argument that the land was put in at this valuation with a view to defraud the plaintiff. But there is no allegation of fraud in the bill, and whether the object was to defraud the plaintiff or to sell the shares for more than their value to other parties does not appear. Nor does it appear that the defendants have proceeded so far in the organization of the company as to entitle the plaintiff to demand his shares, or to make it desirable that he should take them. For aught that appears, the company is so far unorganized as to be unable to take the land as a grantee, and the land may still be in the hands of Hill as an associate of the original parties, and subject to the plaintiff's lien. Neither the pleadings nor the facts stated in the report are sufficient to establish the plaintiff's title to any present relief upon the construction which we have given to the contract.

*Bill dismissed without prejudice and without costs.*